Next case on this morning's docket is the case of People of the State of Illinois v. Harris-Stahl. And we have Jennifer Camden for the appellant and Mr. Matt Young for the appellate. And you may proceed, Ms. Camden. Thank you, Your Honor. May I please report? Counsel? Jennifer Camden on behalf of People. This is a state appeal from a finding that the defendant had not been restored to fitness. A few facts from the November 2010 discharge hearing. On April 6, 2009, the defendant broke into the home of his estranged wife, took her and two overnight guests as hostages at gunpoint, led them into the basement, and eventually released the two overnight guests before representing to his wife that he intended to kill himself, releasing his wife and shooting himself in the head. He was found unfit to stand trial in July 2010. The discharge hearing was conducted in November 2010, where he was found not not guilty of home invasion and aggravated unlawful restraint. He was remanded to Alton Mental Health in February 2011. The defendant's screening psychiatrist there, Dr. Montani, concluded that the defendant had been restored to fitness. The court held a fitness restoration hearing in May 2011 at which it found the opposite. And that brings us to this appeal. The court at the fitness restoration hearing heard two categories of evidence regarding the defendant's memory. And it's those categories of evidence that the defendant, on appeal, points to as supportive of the court's finding that the defendant had not been restored to fitness. The first is that the defendant had amnesia with regard to the charged events. The second is that the defendant has some difficulty informing new memories. So the issue before this court is whether the court's finding of unfitness to stand trial is supported either by the evidence of amnesia with regard to the charged events or by the evidence of some difficulty forming new memories, where the defendant's screening psychiatrist presented uncontroverted testimony that the defendant understood the nature and purpose of the proceedings against him and that his difficulty in forming new memories would not substantially impair his present ability to assist in his own defense if it were reasonably accommodated by providing the defendant with note-taking materials and some opportunity to confer with his counsel. First, the evidence of amnesia is not a sufficient basis for the court's ruling. Dr. Montani, like the two doctors whose reports were admitted for the initial fitness determination, concluded that the defendant could not remember the charged events. Dr. Montani testified that he did not believe that the defendant was malingering. However, a defendant's amnesia with regard to the charged events is not a sufficient basis for a finding of unfitness to stand trial. The Illinois Appellate Court held in People v. Schwartz, which is cited in the People's Briefs, that such a defendant still may assist in his defense within the meaning of Section 104-10 of the Code of Criminal Procedure. In Schwartz, the court held that the defendant was fit because, though he could not remember the charged events, he was entirely lucid on what his lawyer was trying to do for him, understood the proceedings against him, and could effectively communicate with his lawyer and make trial decisions, except that he could not cooperate in his defense during the amnesiac period. Furthermore, no state or federal case has ever held that amnesia with regard to the charged events is a sufficient basis for a finding of unfitness. The defendant, I expect, may point out the difference between what he calls physiogenic amnesia and what he calls psychogenic amnesia. However, regardless of the nature of the defendant's amnesia, a defendant is unfit under these statutes if, because of his mental or physical condition, he cannot understand the nature and purpose of the proceedings against him or assist in his defense. Thus, these statutes do not consider the nature of the affliction, but the effect of it on particular specific skills of the defendant. Also, I'll point out that Section 104-16, this section dealing with fitness hearings, states that it's not only the defendant's ability to recollect the events charged that is to be probed at a fitness hearing, but also the defendant's present ability to recollect and recount current events. The second category of evidence that the court heard at the fitness restoration hearing concerning the defendant's memory concerned his present memory impairment. The court heard three sources for this evidence. However, only one of them was probative of whether the defendant had been restored to fitness, and that's the reports and testimony of Dr. Montani. The court at the fitness restoration hearing also took judicial notice of the reports that had been submitted for the defendant's initial fitness determination from 2010. However, in every case involving a fitness restoration hearing, there are always going to be initial reports, reports indicating that the defendant had previously been unfit. And if these reports, the reports of Drs. Gilbert and Rabin, remained probative, then there would be no need for a fitness restoration hearing. This was evidence generated before the defendant became fit. It's not probative of whether the defendant was fit. The only question that is- Well, then you're basically saying that it's not probative what the condition is out of which the defendant is supposed to be restored. If you take your position to its logical conclusion, doesn't the trier of fact need a context in which to consider the question of restoration? I suppose the reports are probative of that context, certainly, and probative of the defendant's journey. Then they're appropriate to be considered by the trier of fact, aren't they? Well, these reports were not probative of the defendant's mental state in May 2011 when the fitness restoration hearing was conducted. The first report, Dr. Gilbert's report, was based on an interview with the defendant in July 2009, nearly two years before the fitness restoration hearing. Even Dr. Gilbert's report stated that the defendant may yet recover some short-term memory skills. Dr. Raven's report was based on an interview in April 2010. Dr. Raven could only speculate about the defendant's ability to become fit within a year, but the fitness restoration hearing was conducted after that year had elapsed. You're basically arguing the weight as opposed to the relevance because you have to consider them for the context in order for the trier of fact to have a context. Is that correct?  I think these two reports were irrelevant to determine the defendant's present mental state, the defendant's mental state as it existed in May 2011. Dr. Montani's second report was issued on May 2, 2011, just 11 days before the fitness restoration hearing, and it showed a vast deal of improvement over the defendant's mental state as it was described by Dr. Raven in his April 2010 report more than a year previous. For example, Dr. Raven had reported the defendant was able to repeat only one out of three words after a five-minute delay. Dr. Montani's March report indicated that the defendant's performance had improved to three out of three during that intervening year in which the defendant became restored to fitness. Also, Dr. Raven indicated his belief in April 2010 that the defendant would be unable to learn the information in discovery, listen to testimony, and aid in his defense by communicating with his attorney. But six months after Dr. Raven's report, the defendant's discharge hearing was held in November 2010, and the defendant was present during that hearing, took notes during that hearing, and three or four months later was able to accurately and specifically recount to Dr. Montani at the fitness restoration examination exactly what had happened during that discharge hearing. So when Dr. Montani in spring 2011 told the court his opinion that a defendant's memory impairment such as it existed could be reasonably accommodated by providing him with note-taking equipment and time to consult with his attorney, we don't have to speculate as to whether that was accurate. We know that that was accurate because the record shows that the defendant had already done that. The defendant told Dr. Montani in spring 2011 the order in which the witnesses testified back in November 2010, told Dr. Montani what he perceived were inconsistencies between the evidence presented by the police and by his ex-wife, and reported to Dr. Montani specific high points that the defense was trying to stress at that hearing, lack of gunshot residue testing, lack of fingerprint testing, and evidence regarding the blood trail into the basement. These were the concerns that the defendant had, and these were all recounted to Dr. Montani. The record reflects that this evidence was presented immediately before the state noted in the record that the defendant had been taking notes. So Dr. Montani's expert opinion was that the defendant's condition did not substantially impair his ability to assist in his own defense, and that he was fit to stand trial, providing that these accommodations could be made of providing him with note-taking materials and time to consult with his attorney. And the defendant at this fitness restoration hearing did not present evidence contradicting Dr. Montani's conclusion that memory deficit could be reasonably accommodated, and the defendant does not challenge that point in his answer brief on appeal. In fact, the defendant's attorney, when he presented the initial motion for fitness determination, told the court that the basis for that motion was just the amnesia. But as far as it's functioning today, that's not a problem. The People's Opening Brief at pages 45 through 49 details the defendant's activities, both before and after he was sent to Alton Mental Health, that show his high level of functioning. So in conclusion, like the evidence of amnesia, the evidence of defendant's present memory impairment was an insufficient basis for the court's finding of unfitness, given Montani's uncontradicted testimony that the defendant's impairment could be reasonably accommodated, and given the other evidence corroborating that in the record, showing that the defendant's memory was sufficient, and that he had already employed that reasonable accommodation to a great effect. A finding of unfitness is against the manifest weight of the evidence if it's contrary to uncontradicted and unimpeached expert evidence, and that's what Dr. Montani's testimony was here. In People v. Lucas, a case cited in the People's Brief, the court held that a trial court cannot reject an expert's opinion that a defendant is unfit without some evidence that the defendant is fit, and here the opposite occurred. For that reason, this court should reverse and remand for trial. Ms. Camden, you don't think it's determinative at all that apparently nobody contested that there was amnesia that was, I guess, physiogenic that blocked his memory of the actual events? I can't speak to the distinction between physiogenic and psychogenic, but certainly Dr. Montani's testimony was that a defendant truly could not remember those events. And nobody questioned that? No, I don't believe so. Okay. Does anybody else have the opportunity to rebuttal? When you're perceived and you're prepared to do this again. Thank you. This is the court. Your Honor, I think it's important to point out what it is, in fact, that the state is appealing from before we get into the substance of this case. The procedural history of this case makes it almost entirely impossible for me to argue because the state, in its opening brief, was under the mistaken belief that it was appealing from an order of the court, which turned out to be not an order of the court. We now know that there are two and only two orders consisting of a total of two pages that the state is appealing. We now know that C-154, C-154A, and C-155 of the record are not part of the trial court's order. And based on that, in its reply brief, the state responsibly withdrew the first issue of the trial court applying the wrong standard. However, what makes it hard to argue is that in the opening brief, the state relied on that unilateral decision that there was a different order it was appealing, and in that regard, under every single section of their argument, the state cited C-154, C-154A, and C-155 and based all of its arguments off of those pages. So now that we know that those aren't the court's order, what are we left with when keeping in mind that the state waived its argument that the trial court applied the improper standard? We're left with two orders that are deemed by law to have been cited under the proper standard that found the defendant unfit and the defendant had not been restored to fitness. All the other arguments in the state's opening brief are based on the mistaken belief as to what it was appealing and therefore unable to be responded to. And so in that regard, there's nothing for this court to consider that the circuit court, in this case, did not know the purpose of the restoration of fitness hearing, did not consider all of the evidence adduced at the restoration of fitness hearing, or applied the wrong standard. And this court can only reverse the circuit court if it abuses discretion and is relentless against the manifest weight of the evidence. So what evidence was there then at the restoration of fitness hearing? On page three of its reply brief, the state concedes that the defendant truly has amnesia regarding the instance alleged. Quote, the state does not dispute that the court heard uncontroverted evidence supporting this assertion. In fact, Dr. Montagne opined that the defendant has no memory, will never have memory, and this lack of memory prevents the defendant from assisting in his own defense as it relates to the instance alleged. But the state argues that Mr. Stahl does not have amnesia about other occurrences, other than the instance alleged, and therefore should have been found fit. And the state comes to this court and says, well, there's two things. There's the memory of the instance alleged, and then there's his ability to form new memories. But under the statute, you don't have to have both. Any one of them, any one of those will do to find a defendant unfit. And in that regard, what the state repeatedly fails to recognize is that at fitness hearings, one of the factors that the court is to consider is the defendant's ability to observe, recollect, and relate occurrences. And here's the big part. Especially those concerning the incidents alleged and to communicate with counsel. The statute, 725 ILCS 5-104-16, explicitly states, especially those occurrences concerning the incidents alleged. And if it is not those occurrences concerning the incidents alleged that the statute is referring to when it states the defendant's ability to communicate with counsel, then what is it? The weather outside? The time of day that it is? If the statute wanted one of the factors to just be solely the defendant's ability to communicate with counsel generally, then it wouldn't have included it in the very same paragraph relating to the defendant's ability to observe, recollect, and relate occurrences concerning the incident alleged. The legislature could have just as easily made the defendant's ability to communicate with counsel generally an independent factor for the court to consider, but it didn't. And the reason is clear. Because the only relevant thing for the court to consider is the defendant's ability to communicate to counsel occurrences, especially those concerning the incidents alleged. That is the only relevant communication that relates to criminal proceedings, other than some extraneous circumstances that may set up a defense. So the fact of the matter is this. One of the factors that the court has to consider, in fitting standards, is the defendant's ability to relate occurrences to counsel, especially those occurrences concerning the incident alleged, and all three experts have unequivocally stated the defendant cannot do so. And furthermore, to Justice Goldenberg's point, there was nothing that had changed as it related to that fact from the defendant's ability to assist in his own defense, from the original fitness hearing that the state stipulated to, and the restoration of fitness hearing. At the restoration of fitness hearing, we still have those three experts, including Dr. Montani, that stated the defendant could not recall occurrences concerning the incident and may never be able to do so. As stated before, Dr. Montani opined and conceded that the defendant has no memory, will never have memory, and in that regard will be unable to assist in his defense in that regard. Therefore, nothing changed as to this fact from the original fitness hearing and the restoration of fitness hearing. The only thing that changed was Dr. Montani's legal conclusion as to this fact. And as we noted in our brief, this conclusion was for the judge to determine, based on the evidence before it, not Dr. Montani. Therefore, the circuit court's ruling was not against the manifest way to the evidence, but rather it comported to the evidence. In fact, when considering these factors, it would have been an abuse of discretion and reversible error for the court to not consider these three coinciding opinions of the experts in this case that the defendant cannot relate the circumstances of the incident to counsel and will never be able to do so, and thereafter find him fit. The court in People v. Williams held that it was reversible error for the trial court to disregard uncontroverted evidence and find the defendant fit. Therefore, the circuit court should be affirmed. But the state relies on the case of People v. Schwartz as authority for reversing the trial court. And first of all, I think that it is absolutely fatal to the state's case that in Schwartz, the defendant had psychogenic amnesia, and the expert opined in that case at page 632 that, quote, defendant's amnesia could possibly be removed by clinical hypnosis or administering sodium amitone, end quote. In our case, all three experts stated there's absolutely nothing that can be done to remove Mr. Stahl's physiogenic amnesia. His amnesia is a result of brain damage. And in an effort to parallel the holding in Schwartz, wherein the court stated that the defendant's disability may reasonably be accommodated by medication, the state, in this case, offers Mr. Stahl a piece of pen and a paper, or a piece of paper and a pen. However, this will do nothing to accommodate Mr. Stahl's amnesia about the events of the incident, which all three experts said can and never will be removed. Also in Schwartz, it's noted on page 640 that, quote, the defendant does not dispute the fact that he committed the charged offenses on April 19, 1982, end quote. However, the same can hardly be said in this case. He can't reasonably say at all whether he committed the charged offenses in this case due to the fact that after Mr. Stahl allegedly shot himself in the head, the facts in this case reveal that the gun that was used to allegedly shoot himself in the head had the hammer in the cocked position. How can one shoot himself in the head and then have the ability to cock the hammer of the gun again? Were there two guns? There were two guns. And there were two apparent suspects. But I think what you're getting at is the evidence revealed that while there were two guns, only one gun was fired. And it was the one gun that was cocked? And it was the one gun that supposedly shot himself in the head that was cocked. It has nothing to do with the other gun. It's only the gun that was fired that shot himself in the head. And that was not disputed? That's not disputed. Was that a revolver? It was a .22. Revolver? I don't think it's a revolver. I think it's just a little . . . When I think of revolver, I think of the six chambers. Right. But I don't know, to be honest. Some weapons cock themselves after one shot. Correct. I agree with that. But it doesn't hold the hammer back. It doesn't hold the hammer back. You have to manually do that. You can pull the trigger and the hammer comes back and goes forward again. Or, in order to shorten the time, you pull the hammer back and then pull the trigger. But as it relates to those facts, the fact of the matter is that the hammer was cocked after he was shot. And so it's just as entirely possible that two alleged victims, the only witnesses to the incident alleged, shot Mr. Stahl in the head and left him for dead thereafter re-cocking the gun again. Since, of course, they were still able to do so since they weren't shot in the head. And, therefore, it's entirely possible that Mr. Stahl is the victim of a crime rather than a suspect of a crime. Due to what occurred . . . Excuse me. There were three witnesses, right? The wife or the estranged wife. I believe it's just the wife and the estranged wife and her boyfriend. And the babysitter. I thought the babysitter was released. Okay. Okay. You're probably right. But they didn't see it either. But you're saying the babysitter was released prior to the shot that's been established. Is that what you're saying? Yes. Okay. I believe so. But they were both still in the house. Or was the boyfriend still there when . . . I think the boyfriend was in the basement. Okay. We don't even know that. But we don't . . . As it relates to Mr. Stahl, we have no idea. We can't confront any of these allegations. But the police did arrive at some point. And he was still in there. And who was in there with him? Anybody at the point that the police arrived? Well, he was just down in the basement bleeding. So he had already been shot when the police arrived. So that's . . . Your point is we have no way to reconstruct it. Which is another of the press' concerns. But which brings me to our next point. The state repeatedly argues that amnesia without warrant is not enough to define a defendant unfit to stand trial. But these cases do not stand for the proposition that it can never be. It just states that . . . The cases just state that amnesia will not always be. And it would be extremely short-sighted to make a rule of law that says amnesia is never a basis for a finding of unfitness. It has to be looked at on a case-by-case basis. It has to be looked at as to what effect does this amnesia give or take away from a person's ability to present their defense. And . . . In the case in Schwartz, it didn't hurt him. Well, can I ask you, was there any examination of his hands or anything? No. Powder residue? No. There wasn't. And there wasn't on the two alleged victims either. But see, this whole thing, it's all one side. See, that's the problem, Justice Javits. I understand your position. I'm just trying to park it up a bit. I got you. But in that vein, when the trial court is analyzing whether or not this amnesia affects someone's ability to present their defense, the court in Schwartz, we've got to remember that in Schwartz, he was not claiming that he did not commit the crime. Rather, he admitted to it. His defense was that he was insane at the time. And in that regard, the state cites to Schwartz, quote, End quote. The defense of insanity. Schwartz was able to assist in his defense of insanity because he recalled the incidents of the day leading up to the murder and arson. He was also able to recall witnesses who saw him. He was able to recall his activities. The amnesia only further reinforced his insanity defense. But in our case, Mr. Stahl has no recollection of the date of the incident, nor of two days prior to the incident. And according to the state's own expert, due to his amnesia, he'll never be able to assist in his defense in that way. And a due process violation occurs if the defendant is unable to assist the defense counsel in his own defense. And in that regard, this court needs to remain mindful of the purposes of the fitness statutes in this state. And that is that they are in place due to the denial of due process of law inherent in trying a defendant who is not mentally fit to stand trial. The whole purpose of the statutes is to afford the suspects the due process of law afforded by them under the United States Constitution and the Illinois Constitution to determine if they are fit to stand trial. And if by reason of disability someone is unable to assist in their defense, then the fitness statutes are in place to deal with those situations. Because without them, there would be a denial of due process. The state's argument that due process concerns are not relevant to fitness hearings is absolutely baseless. The whole reason for the fitness hearing is due to the due process concerns of trying a defendant who is unfit. And because of his amnesia related to this incident, Mr. Stahl cannot present defenses, which is a violation of due process. And the whole point of these fitness statutes is to prevent due process. And we must remember that Dr. Montani's opinion was that he doesn't have memory, will never have it, can't assist. Such opinions are the exact reasons why these statutes exist, to prevent an unfit defendant from standing trial in violation of their due process rights. Mr. Stahl would essentially be an empty chair. And that's precisely the case here, because the undisputed facts show that after the defendant was shot in the head, the gun had its hammer cocked. And due to his amnesia regarding the events of the incident, it is impossible for Mr. Stahl to explain those circumstances and assist in his defense. But what it boils down to is this, Your Honors. In closing, at the restoration of the fitness hearing, we still have three experts, including Dr. Montani. They all have the same opinion. And one of the factors that the court looks at is the defendant's ability to assist in his own defense by communicating to counsel the occurrences concerning the incident alleged. And the only thing that changed at the restoration of the fitness hearing was Dr. Montani's opinion about it. But that was the judge's call. And there is absolutely nothing for this court to consider to show that the circuit court did anything other than consider the evidence, look at the factors that it was supposed to consider under the statute, and make its ruling based on the evidence when considering those factors. Therefore, we would respectfully ask this honorable court to affirm the circuit court's orders. Thank you. Thank you, Ms. Jano. Ms. Camden, you have the rebuttal. Yes, Your Honor, thank you. Quickly, in the reply brief at page two, people do point out that those pages, pages 154 through 155 of the common law record, were not part of the order of the circuit court, as decided in the July 2012 Rule 329 hearing in this case. And as the defendant indicated, it comes down to the evidence presented and whether the court heard any evidence supporting the order. And although the state of the defendant's amnesia had not changed, it was still insufficient to support the court's order. In court, the defendant had already been tried. Whether the defendant could regain a memory in the future was irrelevant. The court held in Schwartz that the defendant had been fit to stand trial. Now, there are two parts to Schwartz. First, the court considered whether, looking back at the fitness determination, whether the circuit court had correctly ruled that the defendant was unfit to stand trial. And after concluding that amnesia with regard to the charged events was no barrier to fitness finding, the court in Schwartz went on to consider defendant's post hoc due process arguments in which the defendant argued that his due process rights had been violated where he was tried and could not remember the charged incident. And in considering the defendant's post hoc due process arguments, the court considered what actually happened at the trial and the nature of the evidence that the defendant was able to marshal in support of his defense, what kind of a defense he was able to put on. So the defendant here today is arguing essentially a reasonable doubt, arguing that there may be these difficulties in trying the defendant, arguing that the defendant may be able to present reasonable doubt. But these are arguments not relevant to fitness determination. These are arguments that would be relevant at trial. And Schwartz holds that the appropriate time to consider these arguments is after trial, that they're not relevant to a determination of whether the defendant is able to consult with his attorney within the meaning of the fitness statutes. And the people did deal with this subject in the opening brief in the discussion of the testimony of a defense legal expert. So you're saying it's kind of in a vacuum. You just looked at whether or not procedurally they're able to assist in the trial. I'm not sure about the word procedurally, Your Honor. Well, as the trial progresses, if they have the present memory to assist their attorney in any issues that may come up during the trial but not necessarily that relate to the events. Yes, Your Honor, I think that's accurate. I mean, the court in Schwartz considered, found it sufficient, found the defendant fit because he was lucid on what his, quote, from the case, lucid on what his lawyer was trying to do for him, understood the proceedings, and could effectively communicate with his lawyer and make trial decisions. That meant that the defendant could assist in his defense within the meaning of the statute. These other due process concerns that the defendant, in this case, is bringing up were concerns that were considered by the court in Schwartz, not in the context of the fitness determination and in whether that determination was correct, but in a post hoc determination of whether the defendant had received a fair trial, which could only be evaluated after the defendant had received a trial, and it was possible to gauge the type of defense that the defendant was able to put on. We're being asked, I think, to speculate as to how defendant's amnesia would affect his trial, and that's not a, that's not relevant to the, that's not relevant to the determination of whether the defendant is able to assist in his defense within the meaning of the statute. Your Honor, I'd ask a couple of questions about who was in the basement, but I think, and just first as a preliminary point, that's discussed in the people's brief, lay out the facts, but those types of questions are exactly why we don't want to go down that road. If we're talking about reasonable doubt and who might have shot who, et cetera, the defendant here is arguing the strength of, about the strength of the state's case and the strength of the possible defense, not arguing that he would be unable to assist his, in his attorney within the meaning of the statute and as interpreted by Schwartz. Thank you, Ms. Chandler. Thank you, Mr. Young, for your arguments and brief.